Filed May 17, 1893.

———————◆———————

No. 15,198.

YELTON, ADMINISTRATOR, *v.* THE EVANSVILLE AND INDIANAPOLIS RAILROAD COMPANY.

DECEDENT'S ESTATE.—*Administrator.*—*Action for Damages Because of Death of Decedent.*—*Control of Action.*—*Right to Compromise.*—*Answer of Compromise with Widow, and Payment.*—The authority given to the personal representative of a deceased person, under section 284, R. S. 1881, to prosecute an action for damages, includes, by necessary implication, the right to control such prosecution; and the widow, if any, and heirs of the decedent, not being parties to the action, and having no right to be parties thereto, have not the right to compromise the action, and such a compromise can not be pleaded in answer to an action by the personal representative of such decedent.

From the Greene Circuit Court.

*W. A. Cullop, C. B. Kessinger, G. A. Knight, A. G. Cavins, E. H. C. Cavins* and *W. L. Cavins,* for appellant.

*J. E. Iglehart, E. Taylor* and *J. T. Hays,* for appellee.

OLDS, J.—This action was brought by the appellant Vaden C. Yelton, administrator of the estate of William B. Yelton, deceased, against the appellee, the Evansville and Indianapolis Railroad Company, for damages on account of the death of the decedent, alleged to have resulted from the negligence of the appellee. The decedent

Yelton, Admr., *v.* The Evansville and Indianapolis Railroad Company.

was in the employ of the appellee as engineer on a passenger train, at the time of his death.

In the first paragraph of the complaint, the death is alleged to have resulted on account of the failure of the appellee to properly keep and maintain its track in a safe condition at a certain point where a switch united with the main track, causing the engine and train to be derailed, and killing the decedent.

The second paragraph of the complaint alleges the death of the decedent to have occurred on account of the engine which the deceased was managing and running coming in contact with, and running against and over, a mule, derailing the engine and cars; that the mule came upon the track, and was run against and over, at a point where the railroad was not fenced, and at a point where the appellee was required by law to fence the same, and the death of the decedent resulted on account of such negligence and failure to fence the railroad, and that the decedent had no knowledge of such condition in the road, and that the same was not fenced.

Appellee answers, first, by general denial; second, that the railroad over which the appellee was running its trains, and upon which the decedent was injured, was owned by the Terre Haute and Indianapolis Railroad Company; that the appellee was running its trains over the same by virtue of a lease, whereby both the appellee and the Terre Haute Railroad Company were each running trains over said railroad; that by the terms of the lease the appellee had no authority to repair, or keep in repair, said road; that the only right it possessed was to run its trains over said road, and the Terre Haute and Indianapolis Railroad Company was to keep the road in repair, and the same had been repaired, and was kept up by the Terre Haute and Indianapolis Railroad Company, by its employes and servants working upon the

same, and that if the injury occurred by reason of the negligence to keep the track in repair, it was by reason of the negligence of the Terre Haute and Indianapolis Railroad Company, and its servants, and not the negligence of the appellee or its servants, and that the usual and ordinary method of keeping up the repairs on said road, as appellant's decedent well knew, was by the labor of the employes and servants of the appellee's lessor.

The third paragraph of answer is addressed to the second paragraph of the complaint, and alleges that the appellant's decedent had run on said road for some six weeks in the employment as engineer, passing over the same, a portion of the time, three times a day in daylight, and had full opportunity to know the condition of the road as to fences, etc., and sets forth other facts in regard to the running arrangements, substantially as stated in the second paragraph.

After the suit was commenced, the appellee made a settlement with the widow of the decedent, and paid to her $500 in full for all damages on account of the death of her husband, and agreed to pay in addition thereto the costs of the clerk and sheriff, as court costs, and that the costs should be paid before a dismissal should be had.

Appellee pleads this settlement and payment as an answer to the complaint, and alleges the payment of the costs, and that she was the widow and sole heir.

The appellant demurred to the last or supplemental paragraph of answer, setting up the settlement with the widow, and the demurrer was overruled, exceptions reserved, and the ruling assigned as error.

The appellant, failing to reply to the last paragraph of answer, after being ruled to do so, judgment was rendered against him for costs.

We will first consider the sufficiency of the last para-

graph of answer, upon which judgment was rendered.

It is suggested that this paragraph contains two separate and distinct defenses, that the closing averments of the paragraph allege that the damages sued for "have been fully compromised, adjusted, settled, and paid for." "That the paragraph pleads two defenses: 1st. A detailed statement of facts showing payment. 2d. A general averment of payment and release," and that there is judgment rendered upon it.

We can not give our assent to this method of pleading or to this theory of the particular pleading. It is very certain that this paragraph attempts to plead facts showing a settlement of the damages with the widow; that she was the only heir, and alleging a payment of the costs in pursuance with the terms of the contract of settlement. This clearly appears to be the theory upon which the paragraph is based.

The action is prosecuted under section 284, R. S. 1881. This section authorizes the action to be prosecuted by the administrator of the decedent. The damages recovered inure to the exclusive benefit of the widow and children of the deceased.

In this case, there being no children, the damages would inure to the sole benefit of the widow, but she could not prosecute the action. It must be prosecuted by the administrator. This being true, if the widow can compromise the cause of action and release the damages so as to terminate the suit, it places the administrator in the anomalous position of having the sole right to prosecute the action, and yet gives to the widow, or widow and children, if there be children, the right to compromise the action outside of court, and cancel the claim for damages upon which the action is based. While it would give to the administrator the sole right to prosecute the action, yet he

would not have the sole right to control the prosecution of the action once commenced. It would seem that the law which authorizes a person to prosecute an action would give to him, by necessary implication, the right to control such prosecution, and not permit one not a party to the action, and having no right to be a party to the action, the right to compromise the action. While actions under this section of the statute are prosecuted for the benefit of, and the damages inure to the exclusive benefit of, the widow and children of the deceased, yet it contemplates the collection of the damages by the administrator, and the turning of the same over to the widow and children on final settlement.

The fund is evidently chargeable with the necessary expense incurred by the administrator in payment for his services and attorney's fees and expense of administration at least. This would be true in the absence of any other estate of the decedent out of which the same could be paid, and it is certainly questionable whether any other estate could be applied to such expense to the exclusion of creditors of the estate. It is evident that no part of this fund could be diverted from the source the statute provides it shall go, except that it would, under some circumstances at least, be chargeable with a lien for the necessary expense in collecting the same, and the defendant could not compromise with the beneficiary and defeat such lien. While the question is a new one, yet it seems to us that the administrator has the exclusive control of the prosecution of the action, and that it can not be compromised or controlled by the beneficiaries under the statute.

Even upon another theory, we think the paragraph of answer is deficient. In order to plead a good defense to the action, if the beneficiary could compromise and cancel the right of recovery to so much of the damages as

she, in the end, would be entitled to recover, yet it would be necessary to make a supplemental answer showing a settlement after the commencement of the action, and that there were other funds which were liable for, and out of which, the necessary expense of the services of the administrator and his attorney's fees, as well as the costs of administration incurred on account of such claim for damages, could be paid, or an offer to have them ascertained and to pay them. This the answer does not do. But certainly the funds derived from an action of this character is liable for the necessary costs and expense of the collection of the damages recovered.

It was certainly not the intention of the Legislature to charge the other assets of the estate with the expense of collecting this class of damages inuring to the benefit of the widow and children of the deceased, but the fund so derived must be chargeable with the expense of its collection, including such costs of administration and attorney's fees as are incurred on account of the collection, and that the net proceeds derived from such source shall inure to the benefit of the widow and children.

The action is in favor of the personal representatives of the deceased, and the widow has no power to control the prosecution of the action, or interfere with its prosecution or make settlement of the cause of action. It is the damages collected in such an action that inures to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased.

In Iowa, there is a statute very much the same as the one in this State, and is in effect the same. It provides that: "When a wrongful act produces death, the damages shall be disposed of as personal property belonging to the estate of the deceased, except that if the deceased leaves a husband, wife, child, or parent, it shall not be

liable for the payment of debts." Section 3731, Iowa R. S. 1888.

In the case of *Dowell, Admr.*, v. *Burlington, etc., R. W. Co.*, 62 Ia. 629, it is held that in an action brought by the administrator to recover damages resulting from the death of the intestate, the widow of the deceased could not release the claim. The court said: "She is not and was not the administratrix, and could not release the claim of the estate of the intestate based upon his death through negligence of the defendant."

The action is the same in this State. It is a right of action given to the personal representatives of the deceased, the damages recovered to inure to the benefit of the persons named in the act.

It is a continuation in the personal representative, of the cause of action which would have existed for the negligence in favor of the deceased if he had survived. *Long* v. *Morrison*, 14 Ind. 595. The administrator would have the same right to control the action that the deceased would have had, had he survived and prosecuted it. *Rogers, Admr.*, v. *Zook*, 86 Ind. 237.

The administrator of the estate could not make a compromise and settlement of the action, except by the authority of the court. He had the right to prosecute the action to final judgment, and accept and collect the amount of damages assessed, but he had no right to compromise and adjust the claims without the order of the court. *Markel's Admr.*, v. *Spitler's Admr.*, 28 Ind. 488; 2 Woerner on the American Law of Administration, p. 683, section 326.

Errors are assigned and discussed by appellant, on the overruling of appellant's demurrers to the second and third paragraphs of answer. These alleged errors are not discussed by appellee.

On examination of the record we find that no such

questions are presented. In the record, before any answers were filed or set out, or any demurrer thereto, there appears a record of a ruling on a demurrer to the answer. After this there appears in the record a demurrer to the complaint, then follow the paragraphs of answer and demurrer thereto; and, without showing any ruling on the demurrer filed after the filing of the answer, a reply is filed to the second and third paragraphs. The record is in no shape to present any question as to a ruling on the demurrer to these paragraphs of answer. If any ruling was had after the filing of the paragraphs of answer and the demurrer thereto, it does not appear of record; hence, we do not consider the questions as to their sufficiency.

For the error in overruling of the demurrer to the supplemental, or last, paragraph of answer, the judgment must be reversed.

Judgment reversed, with instructions to sustain the demurrer to the supplemental paragraph of answer.

COFFEY, C. J., took no part in the decision of this cause.

Filed Feb. 22, 1893; petition for a rehearing overruled May 19, 1893.